**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION CORPORATION,           :

              Plaintiff-Applicant,           :   SIPA Liquidation

        v.           :   No. 08-01789 (BRL)

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,           :

              Defendant.           :   (Substantively
                                        Consolidated)

------------------------------------------------------------------------x

In re           :

                       :

BERNARD L. MADOFF,           :

              Debtor.           :

------------------------------------------------------------------------x

IRVING H. PICARD, Trustee for the Liquidation of Bernard L.           :
Madoff Investment Securities LLC,           :

              Plaintiff,           :

        v.           :   11 Civ. 4212 (CM)

UBS AG, et al.,           :   ECF Case

              Defendants.           :

------------------------------------------------------------------------x

## REPLY MEMORANDUM IN SUPPORT OF UBS DEFENDANTS' AND LUXALPHA DIRECTOR DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING AND SLUSA PREEMPTION

 

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000

*Attorneys for Defendants UBS AG, UBS*
*(Luxembourg) SA, UBS Fund Services*
*(Luxembourg) SA, UBS Third Party*
*Management Company SA, Rene Egger, Alain*
*Hondequin, Hermann Kranz, and Ralf Schroeter*

September 16, 2011

i

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

I.   THE TRUSTEE LACKS STANDING UNDER SECTION 544 OF THE
     BANKRUPTCY CODE ................................................................. 3

     A.   Under Established Second Circuit Law, the Trustee Lacks
          Standing to Bring Creditor Claims Pursuant to Section 544 of the
          Bankruptcy Code ................................................................. 6

          1.   *Caplin* Remains Binding Law and Section 544(a) Provides
               No Exception ................................................................. 9

          2.   The Second Circuit's Decision in *St. Paul* Neither Overruled
               nor Weakened *Caplin* ................................................... 12

     B.   The Trustee Lacks Standing to Bring Claims Alleging
          "Generalized Harms" to Creditors, Because Such Claims are
          Barred by the *In Pari Delicto* Doctrine .................................. 13

          1.   Standing to Bring Claims Alleging a "Generalized Harm" to
               Creditors Arises Under Section 541, Not Section 544 ........... 14

          2.   Claims Asserted by the Trustee Based on "Generalized
               Harm" to Creditors Pursuant to Section 541 are Barred by
               the Doctrine of *In Pari Delicto* ..................................... 16

     C.   The Trustee Cannot Bring "Choses in Action" Belonging to the
          Estate as a Judgment Lien Creditor Under Section 544 of the
          Bankruptcy Code ............................................................... 18

II.  THE TRUSTEE HAS NO CLAIM FOR CONTRIBUTION ......................... 21

III. THE TRUSTEE LACKS STANDING TO  BRING CUSTOMERS'
     COMMON LAW CLAIMS ........................................................... 24

     A.   The Trustee Lacks Standing as a Bailee ................................. 24

          1.   The Trustee as Successor to BLMIS ................................. 24

          2.   The Trustee as Possessor of the Fund of Customer Property ... 27

     B.   The Trustee Lacks Standing as a Subrogee .............................. 29

     C.   The Trustee Lacks Standing as an Assignee .............................. 30

i

**TABLE OF CONTENTS** *(continued)*

Page

      D.    *Redington* is No Longer Good Law and is Otherwise Inapplicable Here ............................................................................................................. 31

IV.    SLUSA PREEMPTS THE TRUSTEE'S COMMON LAW CLAIMS ........................... 33

V.    THE MOVING DEFENDANTS HAVE NOT WAIVED THEIR PERSONAL JURISDICTION DEFENSES .................................................... 37

CONCLUSION ........................................................................................................... 40

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp., I),*
    333 B.R. 506 (Bankr. D.D.C. 2005) ........................................................... passim

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,*
    436 F.3d 82 (2d Cir. 2006)........................................................................... 31

*Am. Nat'l Bank of Austin v. MortgageAmerica Corp.*
    *(In re MortgageAmerica Corp.),*
    714 F.2d 1266 (5th Cir. 1983) ...................................................................... 8

*Anwar v. Fairfield Greenwich Ltd.,*
    728 F. Supp. 2d 372 (S.D.N.Y. 2010).................................................... 35, 36

*Backus v. Connecticut Cmty. Bank, N.A.,*
    No. 3:09-CV-1256, 2009 WL 5184360 (D. Conn. Dec. 23, 2009) ................ 35

*Barron v. Igolnikov,*
    No. 09 Civ. 4471 (TPG), 2010 WL 882890
    (S.D.N.Y. Mar. 10, 2010) ............................................................................ 35

*Canney v. Merchants Bank (In re Canney),*
    284 F.3d 362 (2d Cir. 2002).......................................................................... 3

*Caplin v. Marine Midland Grace Trust Co.,*
    406 U.S. 416 (1972)............................................................................. passim

*Cent. Hanover Bank & Trust Co. v. Manhattan Co.,*
    105 F.2d 130 (2d Cir. 1939).......................................................................... 8

*Chartschlaa v. Nationwide Mut. Ins. Co.,*
    538 F.3d 116 (2d Cir. 2008).......................................................................... 7

*Delgado Oil Co. v. Torres,*
    785 F.2d 857 (10th Cir. 1986) ..................................................................... 15

*E.F. Hutton & Co. v. Hadley,*
    901 F.2d 979 (11th Cir. 1990) ....................................................................... 8

*Fisher v. Am. Nat'l Bank & Trust Co. (In re Elite Mktg. Enters., Inc.),*
    No. 99 B 29921, 2001 WL 1669229
    (Bankr. N.D. Ill. Dec. 13, 2001) .................................................................. 15

*Geltzer v. Mooney (In re MacMenamin's Grill Ltd.),*
    450 B.R. 414 (Bankr. S.D.N.Y. 2011)......................................................... 16

*Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.),*
    194 B.R. 318 (Bankr. S.D.N.Y. 1996)...................................................... 4, 8

*Hamilton v. Atlas Turner, Inc.,*
    197 F.3d 58 (2d Cir. 1999)........................................................................... 39

**TABLE OF AUTHORITIES** *(continued)*

*Harleysville Worcester Mut. Ins. Co. v. Bank of America, N.A.*
   *(In re Suprema Specialties, Inc.),*
   370 B.R. 517 (S.D.N.Y. 2007)........................................................................ 29

*Hill v. Day (In re Today's Destiny, Inc.),*
   388 B.R. 737 (Bankr. S.D. Tex. 2008) ........................................................... 22

*Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.),*
   No. 06-cv-01233-EWN, 2007 WL 2669150
   (D. Colo. Sept. 6, 2007) ......................................................................... passim

*Hirsch v. Arthur Andersen & Co.,*
   72 F.3d 1085 (2d Cir. 1995)..................................................................... passim

*Holmes v. Securities Investor Protection Corp.,*
   503 U.S. 258 (1992)........................................................................................ 33

*Hudson Transit Corp. v. Antonucci,*
   137 N.J.L. 704, 61 A.2d 180 (N.J. 1948)....................................................... 28

*In re Bauer,*
   26 S.E.C. 770, 1947 WL 24474 (1947) ......................................................... 36

*In re Beacon Assocs. Litig.,*
   745 F. Supp. 2d 386 (S.D.N.Y. 2010)............................................................ 35

*In re Bernard L. Madoff Inv. Sec. LLC,*
   No. 10-2378-bk, 2011 WL 3568936 (2d Cir. Aug. 16, 2011) ................... 22, 36

*In re J.P. Jeanneret Associates, Inc.,*
   769 F. Supp. 2d 340 (S.D.N.Y. 2011)............................................................ 36

*In re Jackson,*
   593 F.3d 171 (2d Cir. 2010).............................................................................. 7

*In re Kingate Mgmt. Ltd. Litig.,*
   No. 09 Civ 5386 (DAB), 2011 WL 1362106 (S.D.N.Y. Mar. 30,
   2011) ........................................................................................................ 35, 36

*In re MV Sec., Inc.,*
   48 B.R. 156 (Bankr. S.D.N.Y. 1985).............................................................. 22

*Johnson v. Melnikoff,*
   873 N.Y.S.2d 234 (Table), 2008 N.Y. Slip Op. 51832(U),
   2008 WL 4182397 (N.Y. Sup. Ct. Sept. 11, 2008)......................................... 30

*Kalb, Voorhis & Co. v. Am. Fin. Co.,*
   8 F.3d 130 (2d Cir. 1993) ............................................................................... 17

*Keene Corp. v. Coleman (In re Keene Corp.),*
   164 B.R. 844 (Bankr. S.D.N.Y. 1994).............................................................. 9

*King Grain Co. v. Caldwell Mfg. Co.,*
   820 F. Supp. 569 (D. Kan. 1993).................................................................... 28

**TABLE OF AUTHORITIES** *(continued)*

*Kirschner v. KPMG LLP*,
15 N.Y.3d 446, 938 N.E.2d 941, 912 N.Y.S.2d 508 (2010) ...................................... 16, 26

*Koch Ref. v. Farmers Union Cent. Exch., Inc.*,
831 F.2d 1339 (7th Cir. 1987) ................................................................ 6, 19

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008) ........................................................................ 34

*Levinson v. PSCC Servs., Inc.*,
No. 3:09-CV-00269, 2009 WL 5184363 (D. Conn. Dec. 23, 2009) .............................. 35

*Lumbard v. Maglia, Inc.*,
621 F. Supp. 1529 (S.D.N.Y. 1985) ............................................................... 8, 9

*Mattel, Inc. v. Barbie-Club.com*,
310 F.3d 293 (2d Cir. 2002) ....................................................................... 38, 39

*Mediators, Inc. v. Manney (In re Mediators, Inc.)*,
105 F.3d 822 (2d Cir. 1997) ..................................................................... 4, 8, 13

*Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*,
816 F.2d 1222 (8th Cir. 1987) ..................................................................... 8

*Musso v. Ostashko*,
468 F.3d 99 (2d Cir. 2006) .......................................................................... 8

*National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*,
414 U.S. 453 (1974) ................................................................................ 31

*Newman v. Family Mgmt. Corp.*,
748 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................................................. 35

*Pension Comm. of the Univ. of Montreal Pension Plan v.*
*Banc of Am. Sec., LLC*,
750 F. Supp. 2d 450 (S.D.N.Y. 2010) ............................................................. 35

*Pereira v. Checkmate Commc'ns Co.*
*(In re Checkmate Stereo & Elecs., Ltd.)*,
9 B.R. 585 (Bankr. E.D.N.Y. 1981) ................................................................ 8

*Pereira v. Cogan*,
No. 00 Civ. 619(RWS), 2001 WL 243537
(S.D.N.Y. Mar. 8, 2001) ............................................................................ 17

*Pereira v. Farace*,
413 F.3d 330 (2d Cir. 2005) .................................................................... passim

*Picard v. HSBC Bank PLC*,
Nos. 11 Civ. 763 (JSR), 11 Civ. 836 (JSR), 2011 WL 3200298
(S.D.N.Y. July 28, 2011) ........................................................................ passim

*Redington v. Touche Ross & Co.*,
592 F.2d 617 (2d Cir. 1978) ................................................................ 31, 32, 33

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Schwartz v. Fletcher,*
    238 A.D. 554, 265 N.Y.S. 277 (1st Dep't 1933) ............................................................ 27

*SEC v. Zandford,*
    535 U.S. 813 (2002) ........................................................................ 36

*Shearson Lehman Hutton, Inc. v. Wagoner,*
    944 F.2d 114 (2d Cir. 1991) ........................................................ passim

*SIPC v. Charisma Sec. Corp.,*
    371 F. Supp. 894 (S.D.N.Y. 1974) .................................................. 22

*SIPC v. Charisma Sec. Corp.,*
    506 F.2d 1191 (2d Cir. 1974) ........................................................ 22

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,*
    884 F.2d 688 (2d Cir. 1989) ....................................................... passim

*Sumner v. Brenner,*
    53 N.Y.S.2d 250 (App. Term. 1945) ............................................ 27

*Swezey v. Lynch,*
    87 A.D.3d 119, 926 N.Y.S.2d 415 (1st Dep't 2011) ..................... 20

*Touche Ross & Co. v. Redington,*
    442 U.S. 560 (1979) ................................................................. 32, 33

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
    162 F.3d 724 (2d Cir. 1998) ....................................................... 38, 39

*United States v. Speers,*
    382 U.S. 266 (1965) ....................................................................... 10

*Williams v. Cal. 1st Bank,*
    859 F.2d 664 (9th Cir. 1988) .......................................................... 8

*Williams v. Ingersoll,*
    89 N.Y. 508 (1882) ...................................................................... 20

*Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP,*
    No. 09 Civ. 1540 (LBS), 2010 WL 4457322
    (S.D.N.Y. Nov. 2, 2010) ............................................................... 35

**Statutes**

11 U.S.C. § 110(c) (1964) ...................................................................... 10

11 U.S.C. § 110(c) (1966) ...................................................................... 10

11 U.S.C. § 541 ............................................................................... passim

11 U.S.C. § 542 ....................................................................................... 6

11 U.S.C. § 544 ............................................................................... passim

11 U.S.C. § 544(a) ........................................................................... passim

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

11 U.S.C. § 544(a)(2) ................................................................... 10

11 U.S.C. § 544(b) ........................................................................ 16

11 U.S.C. § 547 .............................................................................. 6

11 U.S.C. § 548 .............................................................................. 6

11 U.S.C. § 70a ............................................................................. 11

11 U.S.C. § 70c ............................................................................. 11

11 U.S.C. § 70e ............................................................................. 20

15 U.S.C. § 78bb(f)(1) .................................................................... 1

15 U.S.C. § 78bb(f)(5)(B) .............................................................. 34

15 U.S.C. § 78fff-2(c) .................................................................... 21

15 U.S.C. § 78fff-3(a) .................................................................... 29

15 U.S.C. § 78*lll*(11) ............................................................... 22, 37

15 U.S.C. § 78*lll*(4) ................................................................... 28

Securities Exchange Act of 1934, § 17 ..................................... 31, 32

**Other Authorities**

5 Collier on Bankruptcy ¶ 544.03 (16th ed. 2011) ...................... 10

Bloomberg,
   "Madoff-Linked Fund Liquidator Sues UBS, Ernst & Young,"
   December 18, 2009 ................................................................... 24

Vern Countryman,
   *The Use of State Law in Bankruptcy Cases (Part II)*,
   47 N.Y.U. L. Rev. 631 (1972) ................................................. 10

**Rules**

17 C.F.R. § 240.15c3-3 (SEC Rule 15c3-3) ................................ 25

Fed. R. Civ. P. 12(b)(1) .................................................................. 1

Fed. R. Civ. P. 12(b)(6) .................................................................. 1

Fed. R. Civ. P. 12(h)(1) ................................................................ 38

N.Y. C.P.L.R. 1401 ...................................................................... 23

Defendants UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third Party Management Company SA (the "UBS Defendants"), and Rene Egger, Alain Hondequin, Hermann Kranz, and Ralf Schroeter (the "Luxalpha Director Defendants" and, together with the UBS Defendants, the "Moving Defendants") respectfully submit this reply memorandum of law in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), to dismiss the common law claims alleged against them by Plaintiff Irving H. Picard (the "Trustee") for lack of standing and because they are preempted under the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f)(1) ("SLUSA").

## PRELIMINARY STATEMENT

Having been thoroughly rebuffed in his prior attempts to establish standing by Judge Rakoff's careful decision, the Trustee now resorts to "Plan B" – devoting a substantial portion of his brief ("Trustee Br.") to an argument that was not alleged in his original complaint, that he did not mention in any of his oppositions to withdrawing the reference, and that he did not advance in the *HSBC* case, presumably because it did not (and does not) rise even to the level of the "convoluted theories" that he offered to Judge Rakoff. *Picard v. HSBC Bank PLC*, Nos. 11 Civ. 763 (JSR), 11 Civ. 836 (JSR), 2011 WL 3200298, at *2 (S.D.N.Y. July 28, 2011). In desperation, however, the Trustee seems willing to try anything, asserting standing based on a bizarre interpretation of 11 U.S.C. § 544(a) that is utterly inconsistent with the last forty years of bankruptcy caselaw from the Supreme Court, the Second Circuit, and other courts in this district.

Though his argument follows a long and circuitous path, the Trustee cannot base standing on section 544(a) for the following simple reasons:

- in this Circuit, a bankruptcy trustee may not sue on behalf of creditors, but may only bring claims of the debtor;

- in this Circuit, a claim alleging "generalized harm" to all creditors is a claim that belongs to the debtor, and may be asserted by the trustee under section 541, not section 544, of the Bankruptcy Code; and

- in this Circuit, a trustee lacks standing to bring claims of the debtor against third parties where the debtor and the third party are *in pari delicto*, and the trustee may not avoid this defect through any rights of a "hypothetical judgment creditor."

*See* Section I, *infra*.

None of the other arguments advanced by the Trustee or by the Securities Investor Protection Corporation ("SIPC") in its separate opposition ("SIPC Br.") fares any better:

- The Trustee may not bring a contribution claim under the Securities Investor Protection Act of 1970 ("SIPA"), and the Trustee has suffered no state common law tort liability that would give rise to such a claim.  *See* Section II, *infra*.

- The Trustee's and SIPC's theories of standing as bailee and subrogee on behalf of customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") – which conflict with each other in significant respects, and also with the Trustee's section 544 argument, in which he purports to sue on behalf of "all creditors," not just customers – suffer from fatal flaws, most of which were carefully explained by Judge Rakoff.  Their various efforts to criticize or circumvent the *HSBC* ruling are easily rebutted.  *See* Section III, *infra*.

- Even if standing exists, SLUSA preempts the Trustee's common law claims.  These claims are clearly brought "on behalf of" more than 50 persons, and they clearly allege, and depend on, Madoff's misrepresentations concerning the purchase or sale

of covered securities.  The Trustee and SIPC raise nothing but straw men in their

attempt to circumvent SLUSA.  *See* Section IV, *infra*.

The hodgepodge of inconsistent theories advanced by the Trustee and SIPC is evidence

in itself that neither has a coherent theory of how the alleged conduct of the Moving Defendants

proximately caused damage to any person – whether that person is BLMIS, any particular

customer of BLMIS, all of BLMIS's customers generally, or all creditors of BLMIS.  While the

merits of the claims are for another day, it is only their lack of coherence that allows the

chameleon-like standing arguments of the Trustee and SIPC.

Accordingly, for all of the reasons explained here and in Points I through IV of the Reply

Brief in Support of JPMorgan's Motion to Dismiss the Trustee's Amended Complaint (the "JPM

Reply"), which the Moving Defendants again adopt and incorporate, this Court should dismiss

the common law causes of action asserted against the Moving Defendants.

## I.

### THE TRUSTEE LACKS STANDING UNDER SECTION 544 OF THE BANKRUPTCY CODE

Attempting to concoct standing where none exists, the Trustee asserts that section 544(a)

of the Bankruptcy Code – a provision widely recognized as conferring the *status* of a creditor on

a trustee for the limited purposes of attaching or seizing property that was transferred from the

estate prior to the petition date or invalidating hidden, unperfected liens (*see, e.g., Canney v.

Merchants Bank (In re Canney)*, 284 F.3d 362, 374 (2d Cir. 2002)) – additionally vests the

Trustee with standing *as an actual creditor of BLMIS* to bring common law causes of action

against third parties, such as the Moving Defendants.  This novel effort to find standing fails,

however, under the overwhelming weight of established law in the Second Circuit.

First, the Trustee ignores the holding of *Shearson Lehman Hutton, Inc. v. Wagoner*, which is binding authority in this Circuit and provides the following bright-line rule: "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." 944 F.2d 114, 118 (2d Cir. 1991); *see also Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.)*, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) (section 544 "does not extend beyond avoidance actions . . . and does not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors"). Pursuant to *Wagoner* and its progeny, the Trustee has no standing to bring creditor claims against third parties under section 544 of the Bankruptcy Code.

In an attempt to avoid this unambiguous precedent, the Trustee attacks *Granite Partners* (and, indirectly, *Wagoner*) on the basis that its holding was informed by *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), a Supreme Court case that the Trustee argues is not binding on actions brought by the Trustee pursuant to section 544 of the Bankruptcy Code, as the Second Circuit supposedly held in *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989). *See* Trustee Br. at 31-34. The Trustee, however, misstates the legislative history of the Bankruptcy Code and its predecessor, and thus fails to recognize that *Caplin* applies in all actions brought by the Trustee, whether pursuant to section 541 or section 544 of the Bankruptcy Code. Moreover, the Trustee misinterprets *St. Paul*, and fails to acknowledge that the Second Circuit, in *Wagoner* and other cases, has expressly affirmed the holding of *Caplin*. *See Wagoner*, 944 F.2d at 118 (citing *Caplin*); *see also Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005) (the trustee "may only assert claims of the bankrupt corporation, not its creditors"); *Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822,

826 (2d Cir. 1997) (same); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (same).

<u>Second</u>, while a bankruptcy trustee has standing to bring all claims that belong to the debtor under state law, including those claims that are founded in "generalized harms" to all creditors of the bankrupt estate, the Trustee misconstrues the basis for such standing. Relying heavily on an opinion from the District of Colorado, the Trustee asserts that section 544(a) of the Bankruptcy Code provides him with an independent right to bring causes of action against third parties while standing in the shoes of a hypothetical judgment lien creditor. *See Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.)*, No. 06-cv-01233-EWN, 2007 WL 2669150, at *13 (D. Colo. Sept. 6, 2007).

*Gibson Dunn* misstates the law and is, in any event, inapplicable in this Circuit. Specifically, *Gibson Dunn* conflates the concepts of actions that comprise the property of the bankrupt estate under section 541 of the Bankruptcy Code (which may properly be brought by the estate's trustee) with the limited actions that may be brought by a trustee under section 544 of the Bankruptcy Code. Furthermore, *Gibson Dunn* is contrary to established Second Circuit law, which provides that causes of action founded in "generalized harms" to all creditors of a bankrupt debtor are estate property under section 541 of the Bankruptcy Code, and thus may be brought by the trustee standing in the shoes of the debtor. *See*, *e.g.*, *St. Paul*, 884 F.2d at 700. Because claims deriving from "generalized harms" to creditors are property of the estate pursuant to section 541, they are subject to all defenses that would be available had the debtor itself brought the claims, including *in pari delicto*. *See Farace*, 413 F.3d at 342.

<u>Third</u>, the Trustee wrongly asserts that section 544 of the Bankruptcy Code authorizes a trustee to foreclose its hypothetical judgment lien on causes of action owned by a debtor and then

pursue such actions, in the capacity of a judgment lien creditor, against third parties.  In support, the Trustee cites *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987). *Koch*, however, is inapposite:  it addresses the authority of a bankruptcy trustee to assert alter ego claims that are founded in generalized harms to all creditors under section 541 of the Bankruptcy Code as property of the estate.  *Koch* does not concern a situation, such as this, where a trustee is attempting to foreclose on an estate claim and then pursue such claim under section 544 of the Bankruptcy Code.

By contrast, *Alberts v. Tuft* (*In re Greater Southeast Cmty. Hosp. Corp., I*), 333 B.R. 506 (Bankr. D.D.C. 2005), confronts this question directly.  In *Greater Southeast*, the court rejected the trustee's assertion that it could hypothetically foreclose on actions that were already in the possession of the estate.  *Id.* at 521.  Moreover, the *Greater Southeast* court held that even if such foreclosure were technically permitted, it would not afford the trustee a shield from any defenses applicable against the debtor (*e.g., in pari delicto*) because "an attaching or garnishing creditor can gain no greater right over the property or interest of the judgment . . . than the debtor himself has therein."  *Id.* at 521-22.

These points are explained in detail below.

A.      **Under Established Second Circuit Law, the Trustee Lacks Standing to Bring Creditor Claims Pursuant to Section 544 of the Bankruptcy Code**

The Bankruptcy Code affords a trustee of a bankrupt estate the power to bring causes of action under two separate statutory provisions:[1] (i) section 541, which identifies what constitutes "property of the estate," and (ii) section 544, which vests the trustee with the limited authority to

---

[1]  While the Bankruptcy Code permits the trustee to bring certain causes of action under additional statutory provisions (*see, e.g.*, 11 U.S.C. §§ 542, 547 & 548) those sections are not relevant to the instant matter and are not discussed herein.

bring state law avoidance actions and attach liens against property transferred out of the estate

while standing in the shoes of a judgment lien or execution creditor.  In relevant part, section

541(a) of the Bankruptcy Code provides:

> The commencement of a case under section 301, 302, or 303 of this title creates
> an estate.  Such estate is comprised of all the following property, wherever
> located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or
> equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a).  The concept of "all legal or equitable interests of the debtor" has been

interpreted to include causes of action against third parties that could have been brought by the

debtor on the date that the bankruptcy petition was filed.  *See In re Jackson*, 593 F.3d 171, 176

(2d Cir. 2010); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008).

> In relevant part, section 544(a) of the Bankruptcy Code provides:
>
> The trustee shall have, as of the commencement of the case, and without regard to
> any knowledge of the trustee or of any creditor, the rights and powers of, or may
> avoid any transfer of property of the debtor or any obligation incurred by the
> debtor that is voidable by —
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of
> the case, and that obtains, at such time and with respect to such credit, a judicial
> lien on all property on which a creditor on a simple contract could have obtained
> such a judicial lien, whether or not such a creditor exists; [or]
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of
> the case, and obtains, at such time and with respect to such credit, an execution
> against the debtor that is returned unsatisfied at such time, whether or not such a
> creditor exists . . . .

11 U.S.C. § 544(a).  While some courts may differ on the ability of a trustee to bring claims on

behalf of creditors pursuant to section 544(a), the law on this issue in the Second Circuit is

crystal-clear:  a trustee may only assert claims on behalf of the bankrupt entity, *not* on behalf its

creditors.  *See Wagoner*, 944 F.2d at 118 ("it is well settled that a bankruptcy trustee has no

standing generally to sue third parties on behalf of the estate's creditors, but may only assert

claims held by the bankrupt corporation itself"); *see also Farace*, 413 F.3d at 342 (the trustee

"may only assert claims of the bankrupt corporation, not its creditors"); *Mediators*, 105 F.3d at

826 (same); *Hirsch*, 72 F.3d at 1093 (same); *Granite Partners,* 194 B.R. at 324.

In addition, the vast majority of other Circuit Courts of Appeals that have considered the

issue have similarly rejected the notion that section 544 of the Bankruptcy Code provides

expansive rights of the trustee to bring creditor claims against third parties.  *See, e.g., E.F.

Hutton & Co. v. Hadley*, 901 F.2d 979 (11th Cir. 1990); *Williams v. Cal. 1st Bank*, 859 F.2d 664

(9th Cir. 1988); *Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222 (8th Cir.

1987).

The Trustee ignores unambiguous – and binding – precedent and instead seeks to

overturn it by relying upon a number of non-controlling cases, from a small minority of courts

(most prominently, courts in the Tenth Circuit), that have recognized a more expansive grant of

authority to a trustee under section 544 than is recognized in the Second Circuit.  *See* Trustee Br.

at 28-30.[2]  Courts in this Circuit, however, have never recognized this more expansive reading of

---

[2] Other than the minority-view, non-controlling cases, the other cases cited by the Trustee are
inapposite.  The Trustee cites *Musso v. Ostashko*, 468 F.3d 99 (2d Cir. 2006), *Cent. Hanover
Bank & Trust Co. v. Manhattan Co.*, 105 F.2d 130 (2d Cir. 1939), and *Pereira v. Checkmate
Commc'ns Co. (In re Checkmate Stereo & Elecs., Ltd.)*, 9 B.R. 585 (Bankr. E.D.N.Y. 1981),
each for the general proposition that the trustee may exercise "whatever remedies" are
provided under state law to judgment lien creditors.  *See* Trustee Br. at 21.  While the Trustee
implies that the quotations plucked from these cases expand the grant of authority under the
Bankruptcy Code to the Trustee, none of these cases involved an attempt by a trustee to bring
state common law tort claims against third parties.  Rather, each of these cases involves or
references either run-of-the-mill avoidance actions brought by the trustee to claw-back
fraudulent conveyances under state law, or the use of a hypothetical judgment lien to gain
priority over a competing unperfected lien.  *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529,
1542 (S.D.N.Y. 1985), erroneously relied on *Am. Nat'l Bank of Austin v. MortgageAmerica
Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983), for its
proposition that section 544(a) vests the trustee with the right to bring tort claims against
third parties.  *MortgageAmerica*, however, involved the prosecution of a state law fraudulent

section 544.  Indeed, the case upon which the Trustee relies most heavily, *Gibson Dunn*,

expressly recognizes this point by identifying *Wagoner* as a case that, *contra Gibson Dunn*, does

*not* recognize the right of a trustee to assert tort causes of action against third parties pursuant to

section 544.  *See Gibson Dunn*, 2007 WL 2669150 at *10; *see also Greater Southeast*, 333 B.R.

at 518 (stating that the Second Circuit, through *Wagoner*, is among the circuits that has rejected

the concept that section 544 affords the bankruptcy trustee standing to bring creditor claims

against third parties).  In other words, the primary case relied upon by the Trustee consciously

chose *not* to follow Second Circuit law.  This Court has no such leeway.

The Trustee attempts to overthrow the Second Circuit's clear line of precedent by arguing

that (1) the holding of *Caplin*, the progenitor of *Wagoner*, is limited to actions brought by the

Trustee pursuant to section 541 of the Bankruptcy Code and is thus not applicable in actions

brought pursuant to section 544, and (2) the Second Circuit narrowed the holding of *Caplin* in *St.

Paul*.  *See* Trustee Br. at 32-33.  Neither of these assertions is correct.

### 1.    *Caplin* Remains Binding Law and Section 544(a) Provides No Exception

*Caplin*, a Supreme Court case, was decided under the Bankruptcy Act of 1898 (the

"Bankruptcy Act"), the predecessor to the Bankruptcy Code.  In *Caplin*, the Supreme Court held

that a bankruptcy trustee lacks standing to bring claims of creditors against third parties (in that

case, against an indenture trustee on behalf of debenture holders).  The Trustee argues that

*Caplin*'s holding is necessarily limited to actions brought by the Trustee under section 541 of the

Bankruptcy Code because in 1965, when the bankruptcy petition from which *Caplin* arose was

---

conveyance suit, not a common law tort action against third parties.  Moreover, *Lumbard* was
decided in 1989, prior to the Second Circuit's clarification of trustee standing in *St. Paul* and
*Wagoner*.  *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 851 (Bankr. S.D.N.Y.
1994), relied entirely on *Lumbard* and, for the reasons discussed above, should be
disregarded as well.

filed, the Bankruptcy Act, according to the Trustee, did not contain a provision analogous to the current section 544(a).  *See* Trustee Br. at 32 ("in 1965, when the liquidation in *Caplin* began, the hypothetical judgment creditor powers did not exist").

Contrary to these assertions, however, the Bankruptcy Act in effect in 1965 *did* contain a predecessor to section 544(a) of the Bankruptcy Code, which conferred the status of a judgment creditor on a trustee.  *See* 11 U.S.C. § 110(c) (1964) (current version at 11 U.S.C. § 544) ("[t]he trustee . . . shall be deemed vested as of [the date of bankruptcy] with all the rights, remedies, and powers of a creditor then holding a lien thereon by [legal or equitable] proceedings, whether or not such a creditor actually exists").  The Trustee's own cited authority does not lead to a different conclusion.  In *The Use of State Law in Bankruptcy Cases (Part II)*, Professor Countryman confirms that versions of the Bankruptcy Act that were operative prior to the amendments in 1966 vested the trustee with the status of a creditor holding "a lien obtained by legal or equitable proceedings."  Vern Countryman, *The Use of State Law in Bankruptcy Cases (Part II)*, 47 N.Y.U. L. Rev. 631, 649 (1972).  This status was clarified by the Supreme Court in 1965 to mean a "judgment creditor."  *Id.* (citing *United States v. Speers*, 382 U.S. 266 (1965)).  As such, the version of the Bankruptcy Act in effect in 1965, as interpreted by the Supreme Court, contained a provision that conferred on a trustee the status of a judgment creditor.[3]  Thus, the argument that the *Caplin* court "could not have considered the implications of hypothetical

---

[3] The 1966 amendments to the Bankruptcy Act merely enhanced the procedural rights of the trustee by clarifying that such trustee held the status of a hypothetical creditor with a writ of execution returned unsatisfied.  *See* 11 U.S.C. § 110(c) (1966) (current version at 11 U.S.C. § 544(a)(2)).  This section of the Bankruptcy Act was added to provide the trustee with a "procedural assist" in situations where applicable state law required a creditor to exhaust all legal remedies (*i.e.*, delivery of a writ of execution) before seeking equitable relief such as discovery, injunctions or receivership proceedings.  *See* Countryman, 47 N.Y.U. L. Rev. at 650; 5 Collier on Bankruptcy ¶ 544.03 (16th ed. 2011).

judgment creditor status on a trustee's ability to bring third-party claims," Trustee Br. at 32, is simply wrong.

Nothing in *Caplin* suggests that the Supreme Court failed to consider the predecessor to section 544(a) when it ruled that a bankruptcy trustee does not have standing to sue third parties on behalf of an estate's creditors.  To the contrary, the Supreme Court in *Caplin* stated that the issue was whether the trustee "had standing under Chapter X of the Bankruptcy Act" (which included section 70c of the Bankruptcy Act, the predecessor to section 544 of the Bankruptcy Code) to bring claims on behalf of estate creditors; it did not limit the question to whether the trustee had standing under section 70a of the Bankruptcy Act (only one section of Chapter X, and the predecessor to section 541 of the Bankruptcy Code).  406 U.S. at 416; s*ee also Greater Southeast*, 333 B.R. at 519.  In addition, the Supreme Court held that "Congress has *not yet* indicated even a scintilla of an intention" to confer standing to sue on behalf of creditors.  406 U.S. at 434 (emphasis added).  If, as the Trustee contends, the relevant authority had been added to the Bankruptcy Act in 1966, six years before *Caplin* was decided, the Court's statement would make no sense, as Congress would, by then, have "indicated . . . an intention" to expand trustee standing; while the Court might have had to explain why section 70c was not applicable (because, according to the Trustee, it was enacted after the liquidation at issue was commenced), the Court would have had to mention Congress' subsequently expressed "intention."  That it did not do so indicates that the Trustee's interpretation is wrong.

Given *Caplin's* analysis of the entirety of Chapter X, including the predecessor to section 544(a) of the Bankruptcy Code, it is not surprising that numerous courts have recognized the continued authority of *Caplin* under the Bankruptcy Code.  *See*, *e.g.*, *Greater Southeast*, 333 B.R. at 518-19 (collecting cases).  These courts endorse the continued vitality of *Caplin* because

"nothing in the text or legislative history of the [Bankruptcy] Code contradicts the *Caplin* opinion."  *Id.*  Indeed, Congress actually considered – but declined to enact – a draft subsection "(c)" to section 544 of the Bankruptcy Code that would have superseded *Caplin*.  *Id.*

> ## 2. The Second Circuit's Decision in *St. Paul* Neither Overruled nor Weakened *Caplin*

Despite the Trustee's arguments, the Second Circuit's decision in *St. Paul* did not "reject the notion that *Caplin* served to bar all third-party actions by a trustee on behalf of creditors." Trustee Br. at 32.  Instead, *St. Paul* held only that where a claim was based in a "generalized harm" to all creditors of a bankrupt estate – and, therefore was, under state law, a derivative claim that is properly a claim *of the debtor* – the trustee had standing to bring such a claim against third parties.  884 F.2d at 701.  Importantly, as discussed further below, *St. Paul* held that such causes of action were property of the estate *under section 541* of the Bankruptcy Code.  *Id.* at 701.  As such, *St. Paul* stands for the unremarkable proposition that a bankruptcy trustee has standing to bring causes of action that constitute estate property (under section 541) against third parties.  This holding conflicts with neither *Caplin* nor *Wagoner*, which provide that the trustee may not sue third parties on behalf of the estate's creditors, but may only assert claims held by the debtor itself.  *Wagoner*, 944 F.2d at 118.  As stated in *St. Paul*, claims alleging generalized harm to creditors are property of the estate under section 541 and are thus claims held by the debtor itself.  884 F.2d at 700, 703-04.  As explained below, as property of the estate, such claims are subject to the *Wagoner* rule and the defense of *in pari delicto*.

Importantly, the continuing vitality of *Caplin* has been affirmed in this Circuit post-*St. Paul*.  In *Wagoner*, which was decided in 1991 – after *St. Paul* and well after the enactment of the Bankruptcy Code and section 544 therein – the Second Circuit cited *Caplin* as the basis for its holding that "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third

12

parties on behalf of the estate's creditors." *Wagoner*, 944 F.2d at 118; s*ee also Farace*, 413 F.3d at 342 (the trustee "may only assert claims of the bankrupt corporation, not its creditors"); *Mediators*, 105 F.3d at 826 (same); *Hirsch*, 72 F.3d at 1093 (same).

**B.    The Trustee Lacks Standing to Bring Claims Alleging "Generalized Harms" to Creditors, Because Such Claims are Barred by the *In Pari Delicto* Doctrine**

Citing the District of Colorado's decision in *Gibson Dunn*, the Trustee argues that he has standing to bring common law tort claims against the Moving Defendants because such claims reflect "generalized harms" to all creditors of BLMIS.  *See* Trustee Br. at 22-26.  While bankruptcy trustees are vested with standing to bring claims which are based in "generalized harms" to all creditors, it is merely because such claims accrue to the debtor under state law and are thus property of the estate.  The Trustee thus misstates the statutory predicate for such authority, and badly misstates the relevance of such authority here.  Relying on *Gibson Dunn,* the Trustee argues that his right to bring claims for generalized harms to creditors arises from section 544 of the Bankruptcy Code.  Trustee Br. at 22.  His reliance on *Gibson Dunn* is misplaced, however, as contrary controlling law in the Second Circuit holds that such authority arises from section 541, as a debtor cause of action, not section 544, as a creditor cause of action.  *See*, *e.g.*, *St. Paul*, 884 F.2d at 700-05.  The distinction is important because, as the Trustee admits, claims brought by a trustee pursuant to section 541 of the Bankruptcy Code are barred by the doctrine of *in pari delicto*.  Trustee Br. at 27 ("even if those claims would be barred by *in pari delicto* if brought under § 541 – because under that section the Trustee stands in the shoes of the debtor, subject to the defenses to which the debtor is subject . . .").

1.      **Standing to Bring Claims Alleging a "Generalized Harm"
to Creditors Arises Under Section 541, Not Section 544**

As noted above, the Second Circuit held in *St. Paul* that a bankruptcy trustee may bring

causes of action against third parties based on "generalized harms" to an estate's creditors where

applicable state law provides that such claims accrue to a debtor.  884 F.2d at 705.  In *St. Paul,*

the plaintiff had guaranteed certain surety bonds of its subsidiary which secured various

performance obligations of the subsidiary.  *Id.* at 690.  The plaintiff later sold the subsidiary to

the defendant, who allegedly plundered the assets of the purchased subsidiary, causing it to be

unable to perform on its obligations and ultimately to file for bankruptcy protection.  *Id.* at 690-

91.  Because the plaintiff remained liable on the surety bonds even after the sale, the issuing

surety sued the plaintiff for damages.  *Id.* at 692.  The plaintiff impleaded the

defendant/purchaser, asserting a claim for damages on an alter ego theory.  *Id.*

The *St. Paul* court found that the asserted claims presented a "generalized" injury to all

creditors of the bankrupt subsidiary, rather than a "particularized" injury to the plaintiff.  *Id.* at

704-05.  In making this determination, the court analyzed whether the bankrupt corporation itself

would have the right, under applicable state law, to bring said cause of action.  *See id.* at 703-04

(finding that under Ohio law the bankrupt subsidiary had the authority to bring an alter ego cause

of action against its parent).  Because the cause of action was founded in a "generalized harm," it

properly accrued to the debtor as estate property and could be asserted by the trustee (to the

exclusion of all others) under section 541 of the Bankruptcy Code.  *See id.* at 703-04 ("[U]nder

Ohio law, a corporation would be able to assert an alter ego cause of action against its parent

corporation.  The cause of action therefore becomes property of the estate of a bankrupt

subsidiary and is properly asserted by the trustee in bankruptcy."); *see also id.* at 700 ("[I]f a

cause of action is property of the debtor, the Bankruptcy Code explicitly gives the trustee the right to assert it on behalf of the estate.  11 U.S.C. § 541.").

The *Gibson Dunn* case cited by the Trustee reaches the same conclusion as *St. Paul*, but for different (and erroneous) reasons.  The District Court for the District of Colorado found that the bankruptcy trustee in that case had standing to bring claims founded in "generalized harms" against third parties pursuant to section 544 of the Bankruptcy Code.  2007 WL 2669150, at *13. The *Gibson Dunn* case is wrongly decided and is contrary to established law in this Circuit.  The *Gibson Dunn* court based its holding almost entirely on *St. Paul* and *Delgado Oil Co. v. Torres*, 785 F.2d 857 (10th Cir. 1986), citing these cases for the proposition that the bankruptcy trustee is the proper party (to the exclusion of all others) to pursue suits for damages to all creditors.  *See Gibson Dunn*, 2007 WL 2669150, at *12.  However, the *Gibson Dunn* court failed to reconcile, or even address, the fact that both *St. Paul* and *Delgado Oil* found that the source of such authority was section 541 of the Bankruptcy Code, not section 544.  *See St. Paul*, 884 F.2d at 700, 703-04; *Delgado Oil*, 785 F.2d at 861 ("plaintiff's cause of action is maintainable only through the debtor corporation; hence, it is property of the estate").[4]  As a secondary basis for its holding, the *Gibson Dunn* court attempted to undermine *Caplin* in the same manner – and for the same reasons – as the Trustee in his opposition brief here.  2007 WL 2669150, at *11-12.  For the reasons discussed above, such attempts to challenge the continuing vitality of *Caplin* are unpersuasive and have been rejected in this Circuit.

---

[4]  Much like *Gibson Dunn*, the court in *Fisher v. Am. Nat'l Bank & Trust Co. (In re Elite Mktg. Enters., Inc.)*, No. 99 B 29921, 2001 WL 1669229 (Bankr. N.D. Ill. Dec. 13, 2001), failed to distinguish or analyze *St. Paul* and other cases which hold that standing to bring claims for "generalized harm" arises from section 541 of the Bankruptcy Code.

Thus, to the extent that the common law claims against the Moving Defendants are founded in "generalized harms" to all creditors of the BLMIS estate,[5] such claims would accrue to the debtor under state law and are thus property of the BLMIS estate, which may be brought by the Trustee solely pursuant to section 541 of the Bankruptcy Code.

### 2. Claims Asserted by the Trustee Based on "Generalized Harm" to Creditors Pursuant to Section 541 are Barred by the Doctrine of *In Pari Delicto*

Pursuant to *Wagoner* and *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 938 N.E.2d 941, 912 N.Y.S.2d 508 (2010), the Trustee is barred from bringing estate claims against the Moving Defendants as a result of the Second Circuit's prudential standing limitations and the *in pari delicto* doctrine. The Trustee's arguments that *in pari delicto* does not apply because the claims are brought pursuant to section 544 of the Bankruptcy Code, *see* Trustee Br. at 52-55, are irrelevant because, as demonstrated above, such claims can only be brought pursuant to section 541. Additionally, each of the cases cited by the Trustee either (i) stands for the unremarkable proposition that the *in pari delicto* doctrine does not bar a trustee from bringing *avoidance actions* against third parties (due to the independent grant of standing provided to trustees under section 544(b) of the Bankruptcy Code), *see, e.g., Geltzer v. Mooney (In re MacMenamin's Grill*

---

[5] This point is not conceded by the Moving Defendants. Although it is not necessary in order to decide the Trustee's standing in this matter, the common law tort claims asserted by the Trustee present "particularized" rather than "general" harms of BLMIS customers, in that they allege breaches of duties to customers, and accrue only to those who were deceived by Madoff's fraud and who can demonstrate that any injury they suffered was proximately caused by the allegedly wrongful conduct of the Moving Defendants. As such, under established Second Circuit precedent, the claims are not property of the estate and may only be brought by the affected creditors. *See Hirsch*, 72 F.3d at 1093 ("[W]hen creditors ... have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so."). It is further notable that, although the Trustee's section 544 argument is based on generalized harm to "all general creditors," Trustee Br. at 22, his actual claims assert breaches of duties only to "customers" of BLMIS, *see, e.g.*, Am. Compl. ¶¶ 357, 366, 376, 390, and he elsewhere asserts that his claim is premised on possession of "customer property."

*Ltd.)*, 450 B.R. 414, 431 (Bankr. S.D.N.Y. 2011), or (ii) represents the minority of jurisdictions that have erroneously held that claims founded on "generalized harms" to all creditors arise under section 544, *see, e.g., Gibson Dunn*, 2007 WL 2669150, at *15.

That the Trustee argues these claims are for "generalized harms" to all creditors of the BLMIS estate, *but see supra* note 5, cannot shield the Trustee from the application of *in pari delicto*.  The Second Circuit has expressly held that any defects of standing afflicting a debtor similarly afflict the trustee, even when bringing claims founded in "generalized harms" of creditors.  *See Farace*, 413 F.3d at 342.

In *Farace*, the Second Circuit considered whether a bankruptcy trustee had standing to bring a cause of action against directors of the debtor corporation for breach of the duty of care.  413 F.3d at 341-42.  The corporate charter of the debtor included an "exculpatory clause," which stated that the directors would have no liability to the corporation or its stockholders for breach of the duty of care.  *Id.*  The trustee for the bankrupt debtor argued that it had standing because it was suing on behalf of the creditors of the debtor (who were beneficiaries of the duty of care because the corporation was insolvent), and creditors were not subject to the exculpation provision.  *Id.*  The *Farace* court disagreed.  *Id.*  While holding that the trustee had authority to bring the "generalized harm" claim because it accrued to the debtor under applicable state law and was thus property of the estate (citing *St. Paul*), it ruled that any defects of standing afflicting the debtor were inherited by the trustee:

> The Trustee argues, and the district court agreed, that despite the existence of the exculpatory clause, the Trustee could bring a claim for breach of the duty of care on behalf of the creditors, rather than the corporation.  The court reasoned that "where the injury is to all creditors as a class, it is the creditors who lack standing and the Trustee who may bring a claim based on that generalized injury."  *Pereira I*, 2001 U.S. Dist. LEXIS 2461, 2001 WL 243537, at *11 (citing *Kalb, Voorhis & Co. v. Am. Fin. Co.*, 8 F.3d 130, 132-33 (2d Cir. 1993), and *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 696-99 (2d Cir. 1989)).  While

> this proposition may be true – because claims that injure all creditors as a class normally belong to the corporation – it does not imply that the Trustee's rights are greater than the rights the corporation would have against malfeasant directors. "Under the Bankruptcy Code [a] trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). Thus, "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Id.* at 118 (citing *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 434, 32 L. Ed. 2d 195, 92 S. Ct. 1678 (1972)). Although corporate officers and directors owe fiduciary duties to creditors when a corporation is insolvent in fact, these duties do not expand the circumscribed rights of the trustee, who may only assert claims of the bankrupt corporation, not its creditors.

*Id.* at 342 (certain internal citations omitted). Based upon this reasoning, the *Farace* court held that the debtor, and by inheritance the trustee, were barred by the same defect – the exculpatory clause in the corporate charter. *Id.*

Similarly, the Trustee is barred from bringing the common law causes of action against the Moving Defendants under the doctrine of *in pari delicto*. The fact that the Trustee argues that the claims are founded in "generalized harms" to all creditors is of no moment – as described in *Farace*, a trustee's right to bring actions against third parties is no greater than that of the debtor, even where the claims are founded in "generalized harms" to all creditors.

**C.    The Trustee Cannot Bring "Choses in Action" Belonging to the Estate as a Judgment Lien Creditor Under Section 544 of the Bankruptcy Code**

In a final attempt to obtain standing pursuant to section 544(a) of the Bankruptcy Code, the Trustee asserts that, acting as a hypothetical judgment creditor, he may foreclose on his hypothetical judgment lien, obtain control of the debtor's causes of action against the Moving Defendants, and then prosecute such actions free and clear of defects such as *in pari delicto*. *See* Trustee Br. at 26-28. This argument also fails under the heavy weight of long-established precedents in this Circuit. Indeed, accepting the Trustee's argument would mean the *Wagoner*

rule would *never* apply to bankruptcy trustees, despite twenty years of precedent holding otherwise.

The Trustee relies primarily on the Seventh Circuit's decision in *Koch*, but such reliance is misplaced:  *Koch* holds that where the trustee brings a claim that is property of the estate, an individual creditor is barred from asserting a similar claim.  831 F.2d at 1349.  In this sense, the holding of *Koch* is consistent with *St. Paul*, and stands for nothing more than that a trustee may bring, under section 541 of the Bankruptcy Code, actions that belong to the debtor under applicable state law, including those founded in a "generalized harm" to all creditors.  As discussed above, such claims, because they are property of the estate, are subject to defenses such as *in pari delicto*.

Notwithstanding the Trustee's arguments to the contrary, *Koch* does *not* stand for the proposition that the Trustee may stand in the shoes of a judgment creditor and receive an assignment of estate causes of action in an attempt to satisfy its hypothetical judgment lien.  The provision of *Koch* cited by the Trustee provides that "[p]ursuant to 11 U.S.C. 544, the trustee, in his capacity as a creditor, may bring suit to reach property or choses in action belonging to the estate that will then be distributed to all creditors."  *Id.* at 1342.  This general provision, which is not further developed in *Koch*, merely recites that a bankruptcy trustee may bring state law avoidance claims against third parties for the benefit of the estate and its creditors, as is well accepted in this Circuit and elsewhere.

While *Koch* is obviously inapplicable here, the Trustee's exact argument was considered, and rejected, in *Greater Southeast*.  There, a liquidating trust (which was assigned claims belonging to the debtor) asserted claims for, among other things, aiding and abetting a breach of fiduciary duty against law firms that represented the former directors of the debtor.  333 B.R. at

513-14.  In an attempt to avoid the repercussions of the *in pari delicto* doctrine, the trustee

argued that he could utilize section 544 of the Bankruptcy Code to step into the shoes of a

hypothetical creditor, execute on the estate's claims against the law firms, and then prosecute

those claims free of all defenses that could be applied against the debtor.  *Id.* at 521.

In rejecting the trustee's argument, the *Greater Southeast* court held that "the [t]rust's

argument, while clever, falls apart once one understands that section 544(a) merely enhances the

trustee's rights under section 541 by giving him the power of a hypothetical creditor to attach a

judicial lien or bring a creditors' bill for property transferred out of the estate."  *Id.* at 521.  The

court further stated:

> The entire Code provision is flavored with the notion of the trustee having the
> power to avoid "transfers" of the debtor, as were its predecessors, sections 70c
> and e of the [Bankruptcy] Act.  Section 544(a) does not split the trustee like an
> amoeba into a simultaneously existent creditor-entity and debtor-entity with the
> creditor-entity attaching a lien against or bring[ing] a creditor's bill regarding a
> cause of action already in the possession of the debtor-entity.  It contemplates just
> one entity, and that is the representative of the estate.  There is no need to employ
> Section 544(a) to bring into the estate that which is already in the estate under
> Section 541, and Congress did not envision that a trustee could actually attach,
> seize, or garnish a claim that is already in her possession any more than a creditor
> with an actual judicial lien or creditors' bill could attach, seize, or garnish a claim
> that already has been given to her.

*Id.* at 521 (internal quotation marks and citations omitted).  In addition, the *Greater Southeast*

court found that even if the bankruptcy trustee could somehow execute on its hypothetical

judgment lien, it would nevertheless be subject to all of the defects inherent to the claim if

brought by the debtor itself.  *See id.* at 521-22 ("an attaching or garnishing creditor can gain no

greater right over the property or interest of the judgment . . . than the debtor himself has

therein"); *see also Swezey v. Lynch*, 87 A.D.3d 119, 926 N.Y.S.2d 415, 419 (1st Dep't 2011);

*Williams v. Ingersoll*, 89 N.Y. 508, 523 (1882) ("But an attaching creditor cannot stand on a

better footing than his debtor (if the assignment be not fraudulent as to creditors), and if he

20

attaches any property of his debtor, it must be attached subject to all lawfully existing liens created by his debtor.  And consequently if his debtor have no equitable interest in a *chose in action*, the creditor cannot acquire any by his attachment.")  (internal quotation marks and citation omitted).

As such, the Trustee's argument that he can somehow foreclose on the causes of action that he already possesses as successor to BLMIS must fail.  Moreover, even to the extent that the Trustee could effect an attachment to seize property (the causes of action) already in his possession, they would still be subject to the doctrine of *in pari delicto*.

* * *

For all of these reasons, the Trustee's new-found argument under section 544 of the Bankruptcy Code fails to establish standing to pursue the common law claims here.

## II.

## THE TRUSTEE HAS NO CLAIM FOR CONTRIBUTION

Unlike his other common law claims, which he acknowledges are not claims brought on behalf of BLMIS, the Trustee contends that he stands in BLMIS's shoes for purposes of his recently asserted contribution claim.  As Judge Rakoff held, *HSBC*, 2011 WL 3200298, at *10, SIPA confers no right of contribution on the Trustee, and the Trustee does not argue otherwise. Instead, the Trustee contends that his contribution right arises under state law, based on BLMIS's liability for torts arising under New York state law.  Trustee Br. at 15-16.

The Trustee's argument is fundamentally flawed.  While it may be true that BLMIS committed torts under state law, those torts are not the basis of the payments that the Trustee is required to make to customers.  Rather, his payment obligations arise entirely by virtue of federal law – *i.e.*, SIPA, which requires distributions of customer property to customers on a ratable basis, to the extent of their net equities.  15 U.S.C. § 78fff-2(c).  "Net equity," moreover, does

21

not depend on proof of tort liability, but is calculated by a mathematical formula set forth in

SIPA.  15 U.S.C. § 78*lll*(11).  Indeed, the Trustee himself acknowledges that "[t]he compulsion

to pay in this case is *the Trustee's obligation to pay customer claims under SIPA*."  Trustee Br. at

17 (emphasis added); *see also* SIPC Br. at 17 ("federal law governs . . . the relationship between

those customers and the Trustee").

      For this reason, the principal case relied upon by the Trustee, *Hill v. Day (In re Today's*

*Destiny, Inc.)*, 388 B.R. 737 (Bankr. S.D. Tex. 2008), is entirely inapposite.  There, the debtor's

underlying obligation was based on fraud claims filed against the debtor.  Liability of the debtor

to such claimants thus depended on the establishment of the underlying state law torts, and proof

of damages suffered by the claimant.  Indeed, the court in *Today's Destiny* provided the

allegedly contributing tortfeasors the right to object to the underlying proofs of claim, which

would establish the debtor's tort liability.  388 B.R. at 755.

      Here, by contrast, the Trustee is obligated by federal law to distribute customer property

to all customers, regardless of whether the customer establishes or even asserts that BLMIS

committed a tort, based not on any "injury" suffered by the customer, but solely on the

customer's "net equity."  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 10-2378-bk, 2011

WL 3568936, at *10 (2d Cir. Aug. 16, 2011) ("[The BLMIS claimants] maintain that SIPA

should operate to make them whole from the losses they incurred as a result of Madoff's

dishonesty.  We disagree."); *SIPC v. Charisma Sec. Corp.*, 371 F. Supp. 894, 899 n.7 (S.D.N.Y.

1974) ("general contract and fraud claims as well as claims for market losses against brokerage

houses are not included in the insurance umbrella afforded by SIPC, and . . . only net equities of

the customers are recoverable"), *aff'd*, 506 F.2d 1191 (2d Cir. 1974); *In re MV Sec., Inc.*, 48 B.R.

156, 160 (Bankr. S.D.N.Y. 1985) ("SIPA does not protect customer claims based on fraud or

breach of contract. . . .  SIPA's primary intent and policy are to protect customers who have cash and securities being held for them by a broker dealer, rather than to serve as a vehicle for the litigation of claims of fraud or violations of Rule 10b-5.") (internal quotation marks and citations omitted).  Federal law determines who is to be paid, and how much they are to be paid.  Simply put, the Trustee is not being "subject to liability for damages for . . . injury to property" under state law, N.Y. C.P.L.R. 1401, but is required to distribute money based on a calculation defined by SIPA.  And because the applicable federal law does not establish a right to contribution, the Trustee has no such claim against the Moving Defendants.

The Trustee also contends that, if he is not empowered to bring a contribution claim against the Moving Defendants, the Moving Defendants would be improperly shielded from liability for their alleged wrongdoing.  Trustee Br. at 18.  But that is nonsensical:  If, as the Trustee contends, certain third parties, in concert with BLMIS, committed torts that jointly injured BLMIS customers, then those customers would have standing to pursue such claims, and the joint tortfeasors can be held accountable.  Indeed, that is one of the major reasons that the Supreme Court *denied* standing to a bankruptcy trustee to bring claims on behalf of creditors – *i.e.*, because the debtor's creditors "are capable of deciding for themselves whether or not it is worthwhile to seek to recoup whatever losses they may have suffered by an action against" third parties.  *Caplin*, 406 U.S. at 431.

SIPC asserts, without any citation, that "the customer/bailors cannot sue at present because any recovery by them outside of the BLMIS liquidation would disrupt SIPA's scheme for the allocation and distribution of customer property."  SIPC Br. at 26-27.  There is no authority for such an assertion, and SIPC ignores reality:  the Moving Defendants *are* being sued by BLMIS customers, including the Luxalpha fund, as represented by its liquidators, for losses

23

sustained through their BLMIS accounts.  *See, e.g.*, Bloomberg, "Madoff-Linked Fund

Liquidator Sues UBS, Ernst & Young," December 18, 2009 (attached as Exhibit A to the Reply

Declaration of Marshall R. King (the "King Reply Declaration")).  Further, if the existence of a

contribution claim were as critical to the SIPA compensation scheme as the Trustee now claims,

one wonders why the Trustee *omitted* a contribution cause of action from his initial Complaint in

this action.

 Accordingly, the Trustee cannot pursue a contribution claim against the Moving

Defendants.

**III.**

**THE TRUSTEE LACKS STANDING TO
BRING CUSTOMERS' COMMON LAW CLAIMS**

**A. The Trustee Lacks Standing as a Bailee**

 The Trustee and SIPC advance two entirely different theories concerning the Trustee's

alleged standing as a bailee of customer property.  That these two parties, theoretically aligned in

interest, cannot even agree on the theory underpinning the bailee argument is a sure indication

that the argument lacks a supportable basis.  But even leaving the inconsistencies aside, neither

bailment theory survives scrutiny.

**1. The Trustee as Successor to BLMIS**

 SIPC contends that "a bailment existed between BLMIS and its customers" and that the

Trustee succeeded to BLMIS's role as the bailee of customer property.  SIPC Br. at 20-21.  As

SIPC recognizes, this theory presents at least two significant obstacles.  First, as Judge Rakoff

held, "under New York law, no bailment can exist where the would-be bailee is a thief and, here,

Madoff acquired investments with the intent to further his Ponzi scheme."  *HSBC*, 2011 WL

3200298, at *5 (footnote omitted).  Second, insofar as the Trustee is asserting claims as

24

successor to BLMIS, the wrongdoing of BLMIS precludes such claims under *Wagoner* and its progeny.

To avoid these problems, SIPC argues that SEC Rule 15c3-3, 17 C.F.R. § 240.15c3-3, which imposes certain requirements on how broker-dealers must maintain control of cash and securities, somehow federalizes the relationship between a broker-dealer and its customers, such that the applicable bailment law is federal common law, and not state law. *See* SIPC Br. at 17 ("federal law governs the relationship between . . . BLMIS and its customers"); *id.* at 18 ("Congress and the Commission federalized that relationship").

SIPC's argument finds no support in the text of SIPA or Rule 15c3-3, and SIPC cites not a single authority holding that Rule 15c3-3 is intended to affect – much less, to determine – whether there is a bailor-bailee relationship between a broker-dealer and its customers; to the contrary, SIPA and Rule 15c3-3 provide protection for customers irrespective of whether a bailment relationship exists.  The mere fact that a broker-dealer must segregate customer property from a broker-dealer's own assets is no reason to conclude that federal law must take over the entire relationship between customers and broker-dealers, and, as Judge Rakoff held, it certainly does not mandate that SIPA trustees be granted standing to bring common law claims on behalf of customers.  *HSBC*, 2011 WL 3200298, at *5 & n.6.  Nothing about New York bailment law is inconsistent with the segregation requirements of Rule 15c3-3 or with the federal goal of protecting customers, and the relevant aspect of New York law – that a thief cannot be a bailee – does not address *how* property must be maintained by the broker-dealer who receives it from the customer, which is the subject of Rule 15c3-3.  The fact that BLMIS's wrongful intent forfeits BLMIS's rights as a bailee does *not* mean that BLMIS was exempted from the requirements of Rule 15c3-3 or that customers' rights *against* BLMIS are in any way impaired.

In the present case, the only impact on customers is that they must pursue their own claims against allegedly responsible third-party tortfeasors.

Moreover, accepting SIPC's argument that federal law governs the relationship between broker-dealers and their customers would mean that state common law claims – such as the breach of fiduciary duty claim that underlies the Trustee's aiding and abetting claims against the Moving Defendants – are also preempted. Surely, neither SIPC nor the Trustee advocates such a rule. But if SIPC is correct, then there is no reason that all of the duties owed by broker-dealers to their customers should not also be dictated by federal, rather than state, law, thus preempting the claims alleged here.

SIPC's theory of bailee standing also fails to avoid the holding of *Wagoner*. If the Trustee is suing as successor to BLMIS, then he is subject to the defenses available against BLMIS, including the *Wagoner* rule and *in pari delicto*. SIPC acknowledges that equitable defenses are available against a bailee, but SIPC simply asserts, without authority, that *in pari delicto* should not be applied because it might also bar a claim by the bailor. SIPC Br. at 26. That logic makes no sense: If an innocent bailor were to sue a third-party for damaging property held by a bailee, *in pari delicto* would be unavailable to the defendant, for the obvious reason that the bailor is not *in delicto*. The most that the defendant would be able to do is to implead the bailee, but that would not be a defense against the bailor.

SIPC also contends that the application of *Wagoner* and *in pari delicto* at the pleading stage is improper. SIPC Br. at 28-29. As a question of standing, however, *Wagoner* is plainly applicable, and the New York Court of Appeals has likewise held that *in pari delicto* "may be resolved on the pleadings in a state court action in an appropriate case." *Kirschner*, 15 N.Y.3d at 459 n.3, 938 N.E.2d at 946 n.3, 912 N.Y.S.2d at 513 n.3. SIPC also asserts that applicability of

these doctrines cannot be determined because "the key facts are either contested and/or more complicated," SIPC Br. at 29, but SIPC identifies no such facts. All of the critical allegations for application of *Wagoner* and *in pari delicto* are set forth on the face of the Trustee's Amended Complaint. *See HSBC*, 2011 WL 3200298, at *10 ("this issue can be properly resolved at the pleading stage, since the overwhelming wrongdoing of Madoff and his now-defunct company, Madoff Securities, is abundantly clear from the face of the Trustee's own complaint").

Accordingly, the Trustee lacks standing as the successor to BLMIS's purported role as bailee.

### 2.    The Trustee as Possessor of the Fund of Customer Property

The Trustee, in contrast to SIPC, contends that the relevant bailment relationship is "not created between the customers and BLMIS (or by any agreement)," but exists between BLMIS's customers and the Trustee; he argues that SIPA creates the bailment "by entrusting the separate fund of customer property to the Trustee's care for return to the customers. . . .  It is, in turn, the Trustee's lawful possessory interest that provides the basis for the Trustee's right to sue the Moving Defendants for damages."  Trustee Br. at 43.  The Trustee rejects SIPC's bailment theory, asserting that the Trustee "does not acquire [customer property] through succession to BLMIS, nor does his status depend on BLMIS's relationship to its customers or to customer property."  *Id.*

This theory, however, falters because of the obvious fact that the customer property has not been damaged during the existence of the alleged bailment.  As the Trustee himself acknowledges, bailees may sue for damage to the bailed property based on their possessory interest in the property; without that possessory interest, the plaintiff lacks any standing.  Thus, bailees may sue for damage only "while the property is in their possession." *Schwartz v. Fletcher*, 238 A.D. 554, 558, 265 N.Y.S. 277, 282 (1st Dep't 1933); *see also Sumner v. Brenner*,

27

53 N.Y.S.2d 250, 251 (App. Term. 1945) (bailee is "authorized to bring suit in his own name to recover damages to the automobile *while it was in his possession*") (emphasis added); *King Grain Co. v. Caldwell Mfg. Co.*, 820 F. Supp. 569, 572 (D. Kan. 1993) ("bailees are permitted to bring suit against third parties because of their possessory interest in the goods *at the time of the damage or conversion* and because of their responsibility to account to the bailor for the goods bailed") (emphasis added); *Hudson Transit Corp. v. Antonucci*, 137 N.J.L. 704, 708, 61 A.2d 180, 183 (N.J. 1948) ("The bailee's right to recover damages for the entire injury to the property rests . . . upon his special property therein arising out of the exclusive right of possession and his *actual possession or right of possession thereof at the time of such loss and injury* . . . .") (emphasis added).

Under the Trustee's bailment theory, the Trustee received property that had already been damaged. It is as if a customer delivered to a dry cleaner a sweater that had already been stained; while the dry cleaner then becomes the bailee of the customer's sweater, the dry cleaner would have no right to sue the person who spilled coffee on the sweater *prior* to the dry cleaner taking lawful possession and obtaining a possessory interest.

The Trustee's only response to this is his assertion that "the Trustee's status as representative of the fund of customer property is explicitly retroactive in scope." Trustee Br. at 43. He bases this claim on the fact that SIPA defines "customer property" to include "property unlawfully converted." *Id.* (citing 15 U.S.C. § 78*lll*(4)). But this provision merely defines the universe of "customer property," and provides that some of that property may be in the hands of others; it does not mean that the Trustee can sue for damage to that universe of property before he obtained a possessory interest. Similarly, there is nothing to support the Trustee's contention that "proceeds" of "unlawfully converted" property would include "damages caused by the

Moving Defendants' participation in perpetuating the Ponzi scheme."  Trustee Br. at 45.  The words themselves ("proceeds of . . . property unlawfully converted") do not include damages for torts allegedly committed against customers, and, in any event, Judge Rakoff carefully considered, and thoroughly rejected, the Trustee's argument that "customer property" includes choses in action.  *HSBC*, 2011 WL 3200298, at *4.

### B.     The Trustee Lacks Standing as a Subrogee

For the reasons explained by JPMorgan and Judge Rakoff, SIPA provides that SIPC is "only subrogated to customer *net equity claims against the estate*, not to all customer claims against third parties."  *HSBC*, 2011 WL 3200298, at *6.

Even if SIPC could obtain common law subrogation rights not provided by the statute, the Trustee would still lack standing to pursue customers' claims against the Moving Defendants. The common law of subrogation provides "a secondary obligor . . . who performs the secondary obligation with the obligee's rights *with respect to the underlying obligation* as though that obligation had not been satisfied.  In other words, one compelled to pay a debt which ought to have been paid by another is entitled to exercise all of the remedies which the creditor possessed *against that other*."  *Harleysville Worcester Mut. Ins. Co. v. Bank of America, N.A. (In re Suprema Specialties, Inc.)*, 370 B.R. 517, 527 (S.D.N.Y. 2007) (internal quotation marks and footnotes omitted; emphasis added).

Here, the obligation satisfied (or partially satisfied) by SIPC was the obligation, imposed by SIPA, of *BLMIS* to its customers.  SIPC's advances were made under 15 U.S.C. § 78fff-3(a), which authorizes such advances "to provide for prompt payment and satisfaction of *net equity claims of customers of the debtor*."  (Emphasis added.)  Even the Trustee acknowledges that, in the present case, SIPC has "discharge[d] an obligation owed by another (*BLMIS*)," and that "the latter" – *i.e.*, BLMIS – would be "unjustly enriched by the retention of the benefit thus

conferred." Trustee Br. at 46 (emphasis added). Thus, because the "purpose of subrogation is to avoid the unjust enrichment of the person whose debt is paid off," *Johnson v. Melnikoff*, 873 N.Y.S.2d 234 (Table), 2008 N.Y. Slip Op. 51832(U), 2008 WL 4182397, at *7 (N.Y. Sup. Ct. Sept. 11, 2008), under the common law, SIPC would become subrogated to the net equity claims of customers *against BLMIS*, just as SIPA provides.

In this respect, the Trustee's subrogee theory fails for much the same reason his contribution claim fails – because the debt being paid to customers by SIPC is one owed exclusively by BLMIS, and created by SIPA, not a common law tort claim for which the Moving Defendants (or any other third parties) are jointly liable. *See supra* Section II. Because SIPC is not satisfying an obligation owed by the Moving Defendants, it obtains no subrogation rights against the Moving Defendants.

Accordingly, for these and the other reasons set forth in the JPM Reply, the Trustee lacks standing as a subrogee.

## C.    The Trustee Lacks Standing as an Assignee

The Trustee concedes that he has *not* received an assignment of claims from any BLMIS customer. Trustee Br. at 49.[6] Accordingly, for purposes of the claims alleged here against the Moving Defendants, the Trustee necessarily lacks standing as an assignee. Whether such assignments would or would not be valid to confer standing if the Trustee someday obtains them is not something the Court need decide – or should decide – on this motion.

---

[6] The Trustee effectively admits that his original Complaint contained a misrepresentation when it affirmatively alleged (at ¶ 14(g)) that "the Trustee has received multiple, express assignments" of customer claims. He makes no effort to apologize for or to explain this falsehood. Given that the Trustee has, in fact, received no such assignments, his present assertion – that he "has standing . . . to the extent the Trustee has received express assignments of certain BLMIS customer claims," Am. Compl. ¶ 15(g) – is likewise misleading.

### D.    *Redington* is No Longer Good Law and is Otherwise Inapplicable Here

As explained in the briefs submitted by JPMorgan, the Supreme Court's reversal of the

Second Circuit decision in *Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), *rev'd*,

442 U.S. 560 (1979), negates the Second Circuit's holding on the issue of standing, and

*Redington* is otherwise cabined by *Wagoner* and *Hirsch*.   The responses of the Trustee and SIPC

fail to resurrect *Redington*.

The Trustee is plainly wrong in insisting that the Supreme Court in *Redington* reversed

"on the merits."   Trustee Br. at 38.   A federal court "must generally resolve material factual

disputes and establish that it has federal constitutional jurisdiction, including a determination that

the plaintiff has Article III standing, before deciding a case on the merits."   *Alliance for Envtl.*

*Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).   Even before

determining questions of standing and jurisdiction, the Supreme Court has held that the court

must decide whether a private right of action exists.   *See National R.R. Passenger Corp. v.*

*National Ass'n of R.R. Passengers*, 414 U.S. 453, 456 (1974) ("it is only if such a right of action

exists that we need consider whether the respondent had standing to bring the action and whether

the District Court had jurisdiction to entertain it").[7]   Thus, the issue decided in *Redington* –

whether a private right of action existed under section 17 of the Securities Exchange Act of 1934

– preceded any consideration of standing, and it necessarily preceded any consideration on the

merits.   On this point, the Trustee is simply wrong in contending (Trustee Br. at 41) that the

---

[7] The Trustee attempts to distinguish *National Railroad Passenger Corp.* as limited to
situations where the questions of private right of action and standing are "virtually the same"
or "inextricably overlapping."   Trustee Br. at 40.   To the contrary, while the Supreme Court
noted that the questions overlapped "in the context of this case," 414 U.S. at 456, the Court
went out of its way to articulate them as distinct questions and explicitly held that, having
declined to find a private cause of action, it was not reaching the question of standing.   *Id.* at
465 n.13.

Second Circuit in *Redington* addressed the bailee and subrogee questions "before" the question

of whether section 17 created a private right of action. *See Redington*, 592 F.2d at 621 ("The

first question we address is whether customers of a brokerage firm are given any remedy by the

'34 Act against accountants whose section 17 reports are false or misleading."). The Second

Circuit – properly – considered the private right of action question first; but because the Supreme

Court reversed on that issue, and thus deprived the federal courts of federal question jurisdiction,

it necessarily means that the lower courts lacked subject matter jurisdiction to consider the

subsequent issues. *See HSBC*, 2011 WL 3200298, at *7.

Moreover, the Trustee cannot be right that the Supreme Court in *Redington* reversed "on

the merits," because the Supreme Court expressly declined to reach the issue of standing. 442

U.S. at 567 n.9. As the Trustee acknowledges, questions of standing must be addressed *before*

reaching the merits; by reaching the question of the implied right of action, but *not* reaching the

question of standing, the Court necessarily viewed the implied right of action as a jurisdictional

question, not a merits question.

Even if the Second Circuit decision in *Redington* remains good law, it would not dictate

the result here. As Judge Rakoff held, *HSBC*, 2011 WL 3200298, at *8, *Redington* addressed

*only* the trustee's and SIPC's standing with respect to the cause of action asserted under section

17, and said nothing about standing for state common law torts. *See Redington*, 592 F.2d at 619

("we are presented with the question whether a private cause of action exists under section 17 . . .

and if so, who may maintain *such an action*") (emphasis added); *see also id.* at 624 (finding that

SIPC was subrogated "to the right of action implied in section 17"). The district court in

*Redington*, having found no implied right of action under section 17, had dismissed the state law

claims for lack of subject matter jurisdiction, without reaching the question of standing. *Id.* at

619 n.3.  And the Supreme Court noted that the Second Circuit, once it found an implied right of action under the federal statute, had "remanded the case to the District Court for consideration of whether to exercise pendent jurisdiction over the state actions."  442 U.S. at 567 n.9.  Thus, at no time did any of the courts in *Redington* consider the issue of standing to bring common law claims.

Significantly, unlike the implied federal cause of action at issue in *Redington*, "common law claims (such as those asserted here) generally require proof of individual reliance and causation, which may pose justiciability concerns in the context of a mass tort action."  *HSBC*, 2011 WL 3200298, at *8.  In noting these distinctions, Judge Rakoff echoed the comments of the Supreme Court in *Holmes v. Securities Investor Protection Corp.*, where the Court noted that "SIPC's theory of subrogation is fraught with unanswered questions," and declined to express an opinion concerning the Second Circuit's decision in *Redington*.  503 U.S. 258, 270, 271 n.17 (1992).  Judge Rakoff also recognized that the defendant in *Redington* was the bankrupt broker-dealer's own accountant, while the defendants in *HSBC*, like the Moving Defendants here, "provided no direct services to Madoff Securities or to customers of Madoff Securities."  2011 WL 3200298, at *8.  The Trustee attempts to respond to these distinctions simply by disagreeing with them.  Trustee Br. at 44-45.  But since *Redington* survives, if at all, only on the shakiest of foundations, any remnant of its authority as precedent should be limited to the claims, and the factual circumstances, present in that case.

## IV.

### SLUSA PREEMPTS THE TRUSTEE'S COMMON LAW CLAIMS

Even if the Trustee has standing to pursue common law claims on behalf of BLMIS customers, SLUSA preempts the particular claims alleged here.  The Trustee's and SIPC's arguments to the contrary are unavailing.

33

First, the Trustee and SIPC contend that this is not a "covered class action," asserting that SLUSA does not preclude actions "in which bankruptcy trustees are seeking recovery on behalf of the estate, even though that recovery may benefit thousands of creditors." Trustee Br. at 61; *see also* SIPC Br. at 43. The Trustee asserts that the Moving Defendants have ignored "the critical distinction between claims *brought* by more than fifty individuals, which are the focus of SLUSA, and claims which merely *benefit* more than fifty individuals, which are protected from pre-emption by the entity exception written within SLUSA." Trustee Br. at 56.

This argument is a straw man. The "critical distinction" identified by the Trustee is *not* the relevant inquiry under SLUSA. The question is not how many parties "bring" the claims, nor how many "benefit" therefrom; rather, the issue is how many people the claims are brought "on behalf of." 15 U.S.C. § 78bb(f)(5)(B). Indeed, the Moving Defendants do not dispute that SLUSA would not apply to claims brought "on behalf of" the BLMIS estate, even though more than fifty persons might "benefit" therefrom, through an increase to the estate's assets. But that is not the nature of the claims asserted by the Trustee.

Here, the Trustee's claims seek not only to "benefit" BLMIS customers indirectly, but are literally brought "on behalf of" those customers, through the bailee, subrogee, and general creditor theories advanced by the Trustee. Under each theory, the Trustee is not bringing claims solely on behalf of the estate; if he were, they would be barred by *Wagoner*. Instead, with the exception of his contribution claim, the Trustee is asserting claims standing in the shoes of others. *See, e.g.*, SIPC Br. at 26 ("In bringing a suit, the bailee is deemed to stand in the shoes of the bailor."). Under such circumstances, the Third Circuit's decision in *LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008), is directly on point, and holds that such claims are preempted by SLUSA.

Second, the Trustee and SIPC assert that the claims here "are not based on untrue statements or omissions in connection with the purchase or sale of covered securities."  Trustee Br. at 66; *see also* SIPC Br. at 46-47.  Ignoring the slew of cases directly on point, holding that claims arising out of Madoff's Ponzi scheme meet the "in connection with" requirement and are barred by SLUSA,[8] the Trustee and SIPC rely instead on *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010).  As numerous cases disagreeing with or distinguishing *Anwar* have noted, *see, e.g., Kingate*, 2011 WL 1362106, at *8-9, *Anwar* presented circumstances quite different than those alleged here.  In *Anwar*, Judge Marrero found the "in connection with" requirement was not met because the case involved claims by investors in "feeder funds" arising from "misrepresentations and breaches of duties *concerning shares purchased in the Funds*," and not concerning covered securities allegedly purchased by Madoff.  728 F. Supp. 2d at 398 (emphasis added).[9]  The *Anwar* court found that the claims against the feeder fund defendants "present[ed] multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased."  *Id.*  The

---

[8]  *See, e.g.*, *In re J.P. Jeanneret Associates, Inc.*, 769 F. Supp. 2d 340, 363 (S.D.N.Y. 2011) (McMahon, J.); *In re Kingate Mgmt. Ltd. Litig.*, No. 09 Civ. 5386 (DAB), 2011 WL 1362106, at *7 (S.D.N.Y. Mar. 30, 2011); *Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP*, No. 09 Civ. 1540 (LBS), 2010 WL 4457322 , at *3 (S.D.N.Y. Nov. 2, 2010); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 312-13 (S.D.N.Y. 2010); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 409–11, 430 (S.D.N.Y. 2010); *Barron v. Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 WL 882890, at *4–5 (S.D.N.Y. Mar. 10, 2010); *Levinson v. PSCC Servs., Inc.*, No. 3:09-CV-00269, 2009 WL 5184363, at *7 (D. Conn. Dec. 23, 2009); *Backus v. Connecticut Cmty. Bank, N.A.*, No. 3:09-CV-1256, 2009 WL 5184360, at *6-9 (D. Conn. Dec. 23, 2009).

[9]  The circumstances of *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 750 F. Supp. 2d 450 (S.D.N.Y. 2010), a non-Madoff case also cited by the Trustee and SIPC, were similar.  There, Judge Scheindlin held that SLUSA did not apply to claims brought by investors in non-covered hedge funds, where the alleged fraud "relates to those hedge funds rather than to the covered securities in the portfolios."  *Id.* at 455.

court also noted that the funds were not "cursory, pass-through entit[ies]" and that a portion of the money the funds received was not invested with Madoff.  *Id.*

Here, unlike *Anwar*, and just as in *Kingate*, "Madoff's fraud is at the heart of the case." *Kingate*, 2011 WL 1362106, at *9.  The claims asserted here are brought by the Trustee on behalf of direct customers of BLMIS, rather than by investors in feeder funds, and thus there are no "multiple layers of separation" between the fraud and the customers, and no securities at issue other than the covered securities that BLMIS falsely promised to purchase.  The very first substantive paragraph of the Trustee's Brief makes clear that this case directly concerns and focuses on "Madoff's fraud."  Trustee Br. at 1.  Indeed, because the Moving Defendants are alleged to have aided and abetted Madoff's fraud, proving fraud and misrepresentations by Madoff, about covered securities, are required elements of the Trustee's case.  The notion, put forth by SIPC, that Madoff's fraud is "merely background" to the Amended Complaint, SIPC Br. at 47, is simply laughable.  Madoff's fraud permeates the Amended Complaint, and is a necessary element of each and every common law claim asserted against the Moving Defendants.

The Trustee also contends that SLUSA does not apply because "the securities did not exist."  Trustee Br. at 66.  This Court rejected just such an argument in *Jeanneret*, supporting its reasoning by reference to *SEC v. Zandford*, 535 U.S. 813 (2002), and *In re Bauer*, 26 S.E.C. 770, 1947 WL 24474 (1947).  *See* 769 F. Supp. 2d at 361-63.  The Trustee cites the Second Circuit's recent decision, affirming the Trustee's calculation of "net equity," for the proposition that "the fiction maintained by a fraudster, or an investor's expectations based on that fiction, should not be determinative of legal rights."  Trustee Br. at 67 (citing *In re BLMIS*, 2011 WL 3568936, at *5, 11).  But the Second Circuit's decision was in an entirely different context – calculating "net

equity" under the definition provided in SIPA, 15 U.S.C. § 78*lll*(11).  It does not mean that BLMIS's misrepresentations concerning covered securities are without any legal effect whatsoever.  Indeed, the "fiction" created by fraudsters, and "an investor's expectations based on that fiction," are at the heart of every securities fraud case, and very clearly give rise to "legal rights" – namely, the right to recover damages caused by reliance on such fictional representation.  The Trustee's argument to the contrary must be rejected.

<u>Finally</u>, the Trustee claims that accepting the Moving Defendants' argument would "be holding that SLUSA impliedly repealed powers granted to the Trustee under SIPA and the Bankruptcy Code."  Trustee Br. at 60.  That is simply not so.  All that SLUSA does is preempt certain state law claims, requiring instead that claims of a certain type be brought pursuant to federal law, and thus helps define the available universe of substantive claims that the Trustee – or any party, for that matter – may bring.  The Trustee is still free to exercise all of his powers under SIPA and the Bankruptcy Code to pursue available claims for which he has standing, but surely, nothing in those statutes *mandates* that Congress or state law make available any particular substantive cause of action.  The Trustee's argument is sheer hyperbole.

For these reasons, even if the Trustee has standing to pursue the common law claims he has asserted, they should be dismissed as preempted by SLUSA.

## V.

### THE MOVING DEFENDANTS HAVE NOT WAIVED THEIR PERSONAL JURISDICTION DEFENSES

In setting the schedule for this case, this Court could not have been clearer:  "I am only interested in dealing with the threshold issues now – SLUSA preemption and standing.  I don't want to deal with other issues."  Endorsed Letter, entered July 12, 2011 (attached as Exhibit B to the King Reply Declaration); *see also* Letter from Hon. Colleen McMahon to All Counsel,

entered on July 14, 2011 ("The only issues I am going to address at this point are standing and

SLUSA preemption.  We will take the rest as it comes, but I do not intend to consolidate UBS

cases with JP Morgan case for all purposes.") (attached as Exhibit C to the King Reply

Declaration).  Accordingly, while noting that they have other grounds for dismissal of the

complaint, including lack of personal jurisdiction, the Moving Defendants limited their briefing

to the two issues specified by the Court.  *See* Moving Defs. Br. at 1 n.1.

The Trustee now argues that, because the Moving Defendants failed to disregard the

Court's order, they should be deemed to have waived any defense of lack of personal

jurisdiction.  Trustee Br. at 11-13.  This "gotcha" argument simply ignores the course of events

and the Court's crystal clear directive.  Because the Moving Defendants did what the Court

asked, the Trustee's argument must be rejected.

In *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293 (2d Cir. 2002), the Second Circuit

refused to find a waiver under Rule 12(h)(1) under similar circumstances.  Writing for a

unanimous panel, then-Judge Sotomayor explained:

> This Court has observed that, to preserve the defense of lack of personal
> jurisdiction, a defendant need only state the defense in its first responsive filing
> and need not articulate the defense with any rigorous degree of specificity.
> *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998).
> Captainbarbie.com substantially satisfied this standard when it asserted its
> challenge to *in rem* jurisdiction explicitly and vigorously at the preliminary
> conference on March 30, 2001, almost two weeks before the date (April 10) that
> Mattel and captainbarbie.com had agreed on as the deadline for answering.
> Moreover, immediately after the court announced April 13 as the date for
> submission of Mattel's brief addressing the issue of *in rem* jurisdiction, counsel
> for captainbarbie.com offered to address that issue on April 13 in "a motion to
> dismiss in lieu of an answer or would the court prefer that we answer [by April
> 10, as agreed] and submit on the 13th on the issue of jurisdiction?"  The court
> responded by discouraging captainbarbie.com from addressing the jurisdictional
> issue until "plaintiff and [the court] take a first cut [in Mattel's brief-in-chief to be
> submitted on April 13]."  The court also assured captainbarbie.com that its right
> "to submit something to me thereafter" would be "preserv[ed]."

Furthermore . . . captainbarbie.com followed the court's instructions by discussing *in rem* jurisdiction in its April 17 response brief – an act that Mattel would now have us construe as a waiver.  Neither fairness nor common sense would permit such a result in these circumstances.  *Cf. Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60-61 (2d Cir. 1999) (observing that in determining whether waiver or forfeiture of objections to personal jurisdiction has occurred, "we consider all of the relevant circumstances").

*Id.* at 307 (alterations in original).  Here, similarly, fairness and common sense dictate that the Trustee's waiver argument should be rejected.

Apparently recognizing that finding a waiver would be unfair to the Moving Defendants if it would have required them to disregard the Court's order as an alternative, the Trustee now suggests that the Moving Defendants could have reconciled the conflicting requirements by "identif[ying] all of their Rule 12(b) objections in their motion – even if briefing on some of those objections was temporarily held in abeyance."  Trustee Br. at 12.  But in essence, that is precisely what the Moving Defendants did – identified the existence of a personal jurisdiction defense in their moving brief, and deferred briefing that issue until a decision on the standing and SLUSA issues.  *See, e.g.*, *Transaero*, 162 F.3d at 730 (finding no waiver of jurisdictional defenses where they were mentioned in a footnote in defendants' initial motion to dismiss).  For this reason as well, the Trustee's waiver argument fails.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Counts 12-18, 26 and 28 of the

Amended Complaint.

Dated:   New York, New York
         September 16, 2011

                                        GIBSON, DUNN & CRUTCHER LLP


                                        By:  _____/s/ Marshall R. King_____
                                             Mark A. Kirsch (MK-7806)
                                             mkirsch@gibsondunn.com
                                             Marshall R. King (MK-1642)
                                             mking@gibsondunn.com
                                             Matthew K. Kelsey (MK-3137)
                                             mkelsey@gibsondunn.com
                                             Gabriel Herrmann (GH-2436)
                                             gherrmann@gibsondunn.com

                                        200 Park Avenue
                                        New York, NY  10166-0193
                                        Telephone: 212.351.4000
                                        Facsimile: 212.351.4035

                                        *Attorneys for Defendants UBS AG, UBS*
                                        *(Luxembourg) SA, UBS Fund Services*
                                        *(Luxembourg) SA, UBS Third Party Management*
                                        *Company SA, Rene Egger, Alain Hondequin,*
                                        *Hermann Kranz, and Ralf Schroeter*

101136990.3